UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| EMPIRE HEALTH FOUNDATION, a Washington nonprofit corporation, | No. 2:17-cv-00209-SMJ |
| Plaintiff, | **ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| CHS/COMMUNITY HEALTH SYSTEMS, INC, a Delaware corporation; CHS WASHINGTON HOLDINGS, LLC, a Delaware limited liability company; SPOKANE WASHINGTON HOSPITAL COMPANY, LLC, a Delaware limited liability company; and SPOKANE VALLEY WASHINGTON HOSPITAL COMPANY, LLC, a Delaware limited liability company, | |
| Defendants. | |

## I.    INTRODUCTION

This case arises from the sale of two hospitals in Spokane in 2008. Empire

Health Foundation (the Foundation) alleges that the defendants (collectively CHS)

have breached the hospital Asset Purchase Agreement (the contract) by failing to

provide sufficient charity care and by failing to meet several other

ORDER - 1

community-health and capital-expenditure obligations. CHS moves to dismiss, arguing that (1) the charity-care requirement the Foundation seeks to enforce is not a part of the contract and not enforceable under the contract; (2) the Foundation fails to allege facts supporting any other breach of contract claim; (3) the Foundation fails to allege cognizable injury; and (4) the Foundation's claims are barred by the statute of limitations.[1] The charity-care requirement at issue here is not directly included in the contract, and, in fact, it is inconsistent with the contract's charity-care provision. However, because the contract's charity-care provision is "subject in all respects to changes in legal requirements or governmental guidelines or policies," the requirement the Foundation seeks to enforce, which is included in a Certificate of Need (CON) issued by the Washington Department of Health (DOH), is enforceable under the contract. With respect to CHS's remaining arguments, the Foundation has alleged a cognizable injury; the Foundation fails to state a claim for breach of any other contractual provision; and the Foundation's claims are not time barred.

---

[1] CHS also moves to dismiss all claims against Defendant CHS Washington Holdings, LLC because it is not a party to the contract at issue and the foundation does not make any specific allegations against it in the complaint. ECF No. 13 at 1. The Foundation has not responded to this argument. CHS's characterization of the allegations appears correct. Accordingly all claims against Defendant CHS Washington Holdings, LLC are dismissed for failure to state a claim

## II. BACKGROUND

In 2008 Empire Health Systems (Empire) sold Deaconess Medical Center and Valley Hospital and Medical Center (the Hospitals) to Defendant Spokane Washington Hospital Company, LLC (SWHC) pursuant to an Asset Purchase Agreement (the contract). ECF No. 1 at 1–2, 8; ECF No. 14-1. SWHC is owned and controlled by CHS/Community Health Systems, Inc. (CHS)[2] which guaranteed all of SWHC's obligations under the Contract. ECF No. 1 at 2, 8. The Foundation is a non-profit community health foundation formed from the proceeds of the hospital sale. ECF No. 1 at 1. The Foundation was assigned all of Empire's rights and obligations when dissolved following the sale. ECF No. 1 at 1.

The Foundation alleges that when CHS purchased the Hospitals it agreed to provide charity care and essential health services as required under Washington's Charity Care Act and Certificate of Need laws. ECF No. 1 at 3. The Foundation alleges the CHS was obligated to provide charity-care to indigent patients at a level that meets or exceeds the regional average, screen patients for indigency before demanding payment, provide care through community-based health programs designed to serve elderly, poor, and at-risk

---

[2] The Foundation alleges the remaining named defendants are involved in operating the Hospitals and are wholly owned and controlled by CHS. ECF No. 1 at 2.

populations, and to fund at least $100,000,000 in capital expenditures at the Hospitals. ECF No. 1 at 3, 8–9.

The Contract addresses "Indigent Care Policies" as follows: [3]

> As of the Closing Date Buyers shall adopt the indigent care policies of CHS attached as <u>Exhibit D</u> hereto, including the relevant provisions of the billing and collections policy with respect to the indigent which are at least as favorable to the indigent and uninsured as Seller's indigent care policy, including the relevant provisions of the billing and collections policy with respect to the indigent, for the Hospitals as Buyers' indigent care policy. No patient will be turned away because of age race gender or inability to pay. Buyers shall use best efforts to cause the Hospitals to continue to provide services to patients covered by the Medicare and Medicaid programs and those unable to pay for emergent or medically necessary care at levels similar to the historic levels of indigent care previously provided by the Hospitals. For a period of at least ten (10) years following the Closing Date Buyers will provide the Board of Trustees with an annual report of their compliance with this <u>Section 10.14</u>. Buyers will also continue to provide care through community-based health programs, including cooperation with local organizations that sponsor healthcare initiatives to address identified community needs and improve the health status of the elderly, poor, and at-risk populations in the community. This covenant shall be subject in all respects to changes in legal requirements or governmental guidelines or policies (such as implementation of universal healthcare coverage).

Contract § 10.15, ECF 14-1 at 53–54. The indigent care policy provides that "[i]n order to serve the health care needs of our community, and in accordance

---

[3] The Court may consider the language of the contract on this Rule 12(b)(6) motion because the contract is referred to extensively in the complaint and forms the basis of Empire's claims. *See United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003).

with RCW 70.170 and WAC 246-453, Deaconess Medical Center ('Hospital') will provide "Charity Care" to patients or the "Responsible Party" without financial means to pay for 'Appropriate hospital-based medical services.'" ECF No. 14-2 at 14. The policy defines eligibility and processes for identification of charity cases, provision of charity care, and denial of charity care. ECF No 14-2 at 14–19.

Pursuant to the Contract, CHS applied for and obtained a "Certificate of Need" from the Department of Health. ECF No. 18-1 at 2. The Certificate provided that:

> Deaconess Medical Center will provide charity care in compliance with the charity care policies provided in this Certificate of Need application, or any subsequent policies reviewed and approved by the Department of Health. Deaconess Medical Center will use reasonable efforts to provide charity care in an amount comparable to or exceeding the average amount of charity care provided by hospitals in the Eastern Washington Region. Currently, this amount is 3.35% of the adjusted revenue. Deaconess Medical Center will maintain records documenting the amount of charity care it provides and demonstrating its compliance with its charity care policies.

ECF No. 18-1 at 2–3.

The Foundation alleges that CHS has failed to meet its charity requirements. ECF No. 1 at 3. Specifically, the Foundation alleges that the CHS fell more than $55 million below the regional charity-care average between 2008 and 2015. ECF No. 1 at 4. The Foundation further alleges that

the Hospitals have inflated their charity-care numbers by charging inflated rates to self-pay patients. ECF No. 1 at 4–5. The Foundation points out that the Hospitals' total charges per patient day for self-pay patients (known as the "chargemaster") has increased at rates significantly higher than the average for Eastern Washington Region hospitals. ECF No. 1 at 5. Considering this alleged chargemaster inflation, the Foundation alleges that CHS fell more than $110 million below the regional charity-care average between 2008 and 2016. ECF No. 1 at 5–6, 9.

The Foundation also alleges that CHS has implemented policies and practices designed to drive indigent patients away from the Hospitals and to overcharge them when they do seek care, failed to provide sufficient care through community-based health programs, and failed to meet its obligation to fund capital expenditures. ECF No. 1 at 7, 9.

The Foundation alleges that CHS's actions have (1) breached the agreements associated with the hospital purchase and (2) constitute a breach of the implied duty of good faith and fair dealing. ECF No. 1 at 7, 9–10. The Foundation seeks injunctive relief requiring the Defendants to comply with the its charity-care obligations under the contract and Washington law and disgorgement of all excess profits retained as a result of its failure to comply with those obligations. ECF No. 1 at 8, 10.

### III. LEGAL STANDARD

A claim may be dismissed pursuant to Rule 12(b)(6) either for lack of a cognizable legal theory or failure to allege sufficient facts to support a cognizable legal theory. *Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### IV. DISCUSSION

**A. The Foundation has alleged a breach of contract claim based on failure to provide adequate charity care.**

The Foundation acknowledges that its breach of contract claim does not attempt to enforce the contract's express charity-care requirements, which required CHS to use "best efforts" to provide indigent care "at levels similar to the historic

levels." Instead, the Foundation alleges that CHS breached its obligation under the CON and under statute to "make reasonable efforts to provide charity care in an amount comparable to or exceeding" the regional average. Accordingly, the critical question for the purpose of this motion is whether the CON's charity-care obligation is incorporated into the contract and may be enforced in a breach of contract action. The Foundation asserts that the CON's charity-care requirement is incorporated into the contract in three ways: (1) Through section 4.3 of the contract, which provides that "all agreements to which any of the Buyers or CHS will become a party pursuant hereto will constitute the valid and legally binding obligations of [CHS]"; (2) through incorporation of background state law; and (3) through Section 10.14 of the contract, which sets specific minimum charity-care requirements, but also provides that "[t]his covenant shall be subject in all respects to changes in legal requirements or governmental guidelines or policies such as implementation of universal health coverage." For the reasons discussed, the CON's charity care requirement is not enforceable through section 4.3 or incorporated under background law, but it is enforceable under section 10.14.

### 1. The CON's charity-care requirement is not enforceable under section 4.3 of the contract.

Section 4.3 provides that "[t]his agreement and all agreements to which any of the Buyers or CHS will become a party pursuant hereto will constitute the valid and legally binding obligations of [CHS]." ECF no. 14-1 at 37. The Foundation

argues that the CON was an "agreement" entered into between CHS and the Department of Health pursuant to the government approvals provisions of the contract (sections 5.4, 6.1, 7.2(a)-(b), & 8.2), and it is therefore enforceable under section 4.3. ECF No. 17 at 7. While the CON may be an "agreement" under the dictionary definition of that term (in that DOH proposed certain conditions and CHS accepted them), it is plainly not the type of agreement contemplated by section 4.3. Rather, and as the Foundation suggests, it is a "government approval" required to facilitate the transaction as discussed in sections 5.4, 6.1, 7.2, and 8.2. ECF No. 14-1 at 40–41, 43, 45. There is no indication that the parties intended that section 4.3 would make government approvals enforceable under the contract. It is clear to the Court that the parties intended section 4.3 to apply to contractual obligations such as private contracts, leases, and similar agreements, as discussed in section 1.5.

### 2. A heightened charity-care requirement is not incorporated as background law.

The Foundation argues that because contracts are presumed to incorporate settled law, CHS was obligated to comply with the requirements of Washington's Charity Care Act. ECF No. 17 at 8. It is true as a general matter that the relevant law existing at the time of formation becomes part of a contract. *See Cornish Coll. Of the Arts v. 1000 Va. Ltd. P'ship*, 242 P.3d 1, 12 (Wash. App. 2010) ("one of the basic principles of contract law is that the general law in force at the time of

the formation of the contract is a part thereof."). The Foundation's argument nevertheless fails for two independent reasons.

First, the Foundation incorrectly states that Washington Revised Code (RCW) 70.38.115(2)(j) and 70.170.060 mandate that CHS provide charity care at a level meeting or exceeding the regional average. ECF No. 17 at 10. That is simply not the case. RCW 70.38.115(2)(j) provides that whether a "hospital meets or exceeds the regional average level of charity care" is a factor DOH must consider in reviewing a CON application. Similarly, RCW 70.170.060 does not set any specific minimum level of charity care.

Second, the parties agreed to a specific minimum level of charity care in section 10.14 of the contract. Statutory requirements do not override permissible provisions explicitly agreed to by the parties. *See State v. Farmers Union Grain Co.*, 908 P.2d 386, 389 (Wash. App. 1996) (statutory procedure for distribution of a condemnation award did not prohibit contract's different condemnation procedure); ECF No. 13 at 7; ECF No. 19 at 2. Here, the parties expressly agreed to a specific minimum level of charity care in section 10.14. ECF No. 14-1 at 53. That specific provision overrides any background law that would have otherwise been applicable.

### 3. The CON's charity-care requirement is enforceable under section 10.14.

Section 10.14 provides, among other things, that "Buyers shall use best efforts to cause the Hospitals to continue to provide services to patients covered by the Medicare and Medicaid programs and those unable to pay for emergent or medically necessary care at levels similar to the historic levels of indigent care previously provided by the Hospitals." ECF No. 10-14 at 53. This is in conflict with the CON's requirement that the Hospitals "use reasonable efforts to provide charity care in an amount comparable to or exceeding the average amount of charity care provided by hospitals in the Eastern Washington Region." ECF No. 18-1 at 2–3. However, section 10.14 also provides that "[t]his covenant shall be subject in all respects to changes in legal requirements or governmental guidelines or policies (such as implementation of universal healthcare coverage)." ECF No. 14-1 at 54.

CHS argues that this provision is merely a limitation on the charity-care requirement, and that it can operate only to eliminate the requirement if it becomes unnecessary. ECF No. 19 at 7–8. CHS argues that this interpretation is supported by the example—implementation of universal healthcare—which may largely eliminate the need for charity-care. *Id.*

The provision's meaning is not as limited as CHS would like. The term "subject" used in this context means "[d]ependent on or exposed to (some

contingency)." *Subject*, Black's Law Dictionary (10th ed. 2014). Read with the remainder of the sentence—"in all respects to changes in legal requirements or governmental guidelines or policies"—it is clear that this is intended to keep the contract's charity-care requirements consistent with changed legal requirements or government guidelines or policies. In other words, section 10.14 requires CHS to meet certain minimum charity-care obligations, including providing charity-care at levels similar to historic levels, unless those requirements become inconsistent with new law or government policy, in which case CHS must comply with the applicable law or policy. If a universal healthcare law eliminated the need for most charity care, this provision would relieve CHS of its obligation to provide charity care at historic levels. But the provision applies equally if new legal requirements or policy mandate that CHS provide a different minimum level charity care, which is what happened here. Because section 10.14 requires CHS to comply with changed legal requirements or policies that are inconsistent with section 10.14's express requirements, those legal requirements or policies are enforceable under the contract.

The CON changed the required minimum amount of charity care CHS was obligated to provide. As discussed, the background state law did not set a specific minimum level of charity care, the parties negotiated and agreed to historic levels of charity care as the minimum in section 10.14, and the CON changed that

minimum to the regional average.[4] Because the CON's charity-care requirement is a change in applicable legal requirements it is enforceable under the contract.

## B. The Foundation fails to state a claim that CHS breached other contract requirements.

The Foundation alleges that CHS "may have" violated the contract by failing to meet the following obligations: (1) providing "care through community-based health programs to address identified community needs and improve the health status of the elderly, poor and at-risk populations," (2) "the continuation of essential health services," and (3) "the provision of $100,000,000 in capital expenditures at the Hospitals." ECF No. 1 at 7–8. These allegations are insufficient to state a claim because even accepted as true they do not permit the court to infer more than a mere possibility of misconduct. *Iqbal*, 556 U.S. at 679. Further, even if the claims were more forcefully stated, they are not supported by any factual allegations. Accordingly, these claims are dismissed

## D. The Foundation has adequately alleged damages.

CHS argues that The Foundation has failed to adequately plead damages, which is a necessary element of breach of contract. ECF No. 13 at 17. The Foundation has more than adequately pleaded damages, including that CHS's

_____

[4] This change is not on its face a requirement to provide more charity care. It could certainly be the case that at some point the regional charity-care average will be less than the level historically provided by the hospitals.

shortfall in providing charity care directly placed greater demands on the Foundation's resources for its own mission of improving access to health care. ECF No. 17 at 13. CHS also argues that disgorgement is not an appropriate remedy for breach of contract. ECF No. 13 at 18. But CHS cites only case law from other jurisdictions to support this point and ignores comments *a* and *d* to the Restatement, which recognize disgorgement as an appropriate contract remedy to prevent unjust enrichment. Restatement (Second) of Contracts § 344 (1981). Whether disgorgement is an appropriate remedy here is a factual question that cannot be decided at this stage.

## C. The Foundation's claims are not time-barred.

CHS argues that the six-year statute of limitations for breach of contract and three-year period for breach of good faith have run. ECF No. 13 at 18–19. RCW 4.16.040. While CHS is correct that under Washington law the statute of limitations for a continuing breach of contract begins at the initial breach, *see Schreiner Farms, Inc. v. Am. Tower, Inc.*, 293 P.3d 407, 411 (Wash. App. 2013), the allegations here are of repeated, separate breaches based on data reported each year. Accordingly, the claims based upon conduct occurring within the limitations period are not barred.

## VI. CONCLUSION

For the reasons discussed, **IT IS HEREBY ORDERED**:

1. **1.** Defendants' Motion to Dismiss, **ECF No. 13**, is **DENIED IN PART AND GRANTED IN PART**.

   *A.* All claims against defendant CHS Washington Holdings, LLC, are **DISMISSED**.

   *B.* Defendants' motion is **DENIED** with respect to the Foundation's claims based on CHS's alleged failure to provide the required minimum level of charity-care. Those claims survive.

   *C.* Defendants' motion is **GRANTED** with respect to the Foundation's breach of contract claims based on the allegations in paragraph 19 of the complaint.

   **IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

   **DATED** this 11th day of October 2017.

   _____
   SALVADOR MENDOZA, JR.
   United States District Judge