FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 09, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| EMPIRE HEALTH FOUNDATION, a Washington nonprofit corporation,<br><br>Plaintiff,<br><br>v.<br><br>CHS/COMMUNITY HEALTH SYSTEMS INC., a Delaware corporation; SPOKANE WASHINGTON HOSPITAL COMPANY LLC, a Delaware limited liability company; and SPOKANE VALLEY WASHINGTON HOSPITAL COMPANY LLC, a Delaware limited liability company,<br><br>Defendants. | No. 2:17-cv-00209-SMJ<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON BREACH OF CONTRACT AND VIOLATION OF CHARITY CARE ACT** |

Plaintiff Empire Health Foundation sues Defendants CHS/Community Health Systems Inc., Spokane Washington Hospital Company LLC, and Spokane Valley Washington Hospital Company LLC (collectively "CHS") for breach of contract, alleging it failed to fulfill the charity care commitments it made in its 2008 acquisition of two Spokane area hospitals. ECF No. 1. Before the Court is the Foundation's Motion for Partial Summary Judgment on Breach of Contract and

ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON BREACH OF CONTRACT AND VIOLATION OF CHARITY CARE ACT **-** 1

Violation of Charity Care Act, ECF Nos. 93 & 94. The Foundation seeks partial summary judgment that CHS, by asking self-paying patients to pay deposits before screening them for charity care eligibility, both (1) breached the parties' contract, including two state agency certificates enforceable under it; and (2) violated the Charity Care Act, Revised Code of Washington ("RCW") section 70.170.060(6) (2006), including its implementing regulation, Washington Administrative Code ("WAC") section 246-453-020(1) (2007)—conduct that was unreasonable *per se*. *Id.* CHS opposes the motion, arguing it raises disputed facts and is unnecessary ahead of the scheduled bench trial. ECF Nos. 123 & 126. After reviewing the record and relevant legal authorities, the Court grants the motion because no genuine dispute exists as to any material fact and, as a matter of law, the Foundation is entitled to the narrow ruling it seeks.

## BACKGROUND

In 2007, Empire Health Services and CHS entered an Asset Purchase Agreement under which Empire Health Services sold Deaconess Medical Center and Valley Hospital and Medical Center to CHS. ECF No. 14-1. The Foundation is a nonprofit community health foundation formed from the proceeds of the sale. ECF No. 1 at 1. The Foundation received all of Empire Health Services' rights and obligations when it dissolved following the sale. *Id.*

Section 10.14 of the contract concerns "Indigent Care Policies." ECF No. 95-

1 at 3–4. Section 10.14 provides,

> As of the Closing Date, Buyers shall adopt the indigent care policies of CHS attached as Exhibit D hereto, including the relevant provisions of the billing and collections policy with respect to the indigent, which are at least as favorable to the indigent and uninsured as Seller's indigent care policy, including the relevant provisions of the billing and collections policy with respect to the indigent, for the Hospitals as Buyers' indigent care policy. No patient will be turned away because of age, race, gender or inability to pay. Buyers shall use best efforts to cause the Hospitals to continue to provide services to patients covered by the Medicare and Medicaid programs and those unable to pay for emergent or medically necessary care at levels similar to the historic levels of indigent care previously provided by the Hospitals. For a period of at least ten (10) years following the Closing Date, Buyers will provide the Board of Trustees with an annual report of their compliance with this Section 10.14. Buyers will also continue to provide care through community-based health programs, including cooperation with local organizations that sponsor healthcare initiatives to address identified community needs and improve the health status of the elderly, poor, and at-risk populations in the community. This covenant shall be subject in all respects to changes in legal requirements or governmental guidelines or policies (such as implementation of universal healthcare coverage).

*Id.*

Exhibit D, which section 10.14 cross-references, provides, "[i]n order to serve the health care needs of our community, and in accordance with RCW 70.170 and WAC 246-453, [each hospital] will provide 'Charity Care' to patients or the 'Responsible Party' without financial means to pay for 'Appropriate hospital-based medical services.'" ECF No. 95-2 at 3, 16. Exhibit D mandates that "[e]ligibility determinations regarding Charity Care and decisions regarding collection of

ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON BREACH OF CONTRACT AND VIOLATION OF CHARITY CARE ACT **-** 3

amounts owed to [each] Hospital by Responsible Parties shall be made in accordance with this Policy and the Procedures contained in this Policy." *Id.* at 4, 17.

Exhibit D then establishes the following procedures:

> [Each] Hospital shall make an initial determination of Charity Care eligibility at the time of admission or as soon as possible following the initiation of services to the patient. [Each] Hospital will suspend all collection efforts (other than third party payors) and will not require any deposit pending an initial determination of Charity Care eligibility or pending a final determination of Charity Care eligibility in the event that the initial determination of sponsorship status indicates that the Responsible Party may meet the criteria for classification as an Indigent Person.

*Id.* at 6, 19. Exhibit D's requirement that the hospitals "suspend all collection efforts" and "not require any deposit pending an initial determination of Charity Care eligibility" tracks applicable statutory and regulatory law.[1]

---

[1] *Compare* ECF No. 95-2 at 6, 19, *with* RCW 70.170.060(6) (2006) ("Each hospital shall make every reasonable effort to determine the existence or nonexistence of private or public sponsorship which might cover in full or part the charges for care rendered by the hospital to a patient; the family income of the patient as classified under federal poverty income guidelines; and the eligibility of the patient for charity care as defined in this chapter and in accordance with hospital policy. An initial determination of sponsorship status shall precede collection efforts directed at the patient."), *and* WAC 246-453-020(1) (2007) ("The initiation of collection efforts directed at the responsible party shall be precluded pending an initial determination of sponsorship status, provided that the responsible party is cooperative with the hospital's efforts to reach an initial determination of sponsorship status; (a) Collection efforts shall include any demand for payment or transmission of account documents or information which is not clearly identified as being intended solely for the purpose of transmitting information to the responsible party; (b) The initial determination of sponsorship status shall be completed at the time of admission or as soon as possible following the initiation of services to the patient; (c) If the initial

ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON BREACH OF CONTRACT AND VIOLATION OF CHARITY CARE ACT - 4

Pursuant to the contract, CHS applied for Certificates of Need from the Washington State Department of Health. ECF No. 95-8 at 2; ECF No. 95-9 at 2. The Department granted CHS's applications "pending agreement to the following conditions":

> [Each hospital] will provide charity care in compliance with the charity care policies provided in this Certificate of Need application, or any subsequent policies reviewed and approved by the Department of Health. [Each hospital] will use reasonable efforts to provide charity care in an amount comparable to or exceeding the average amount of charity care provided by hospitals in the Eastern Washington Region. Currently, this amount is 3.35% of the adjusted revenue. [Each hospital] will maintain records documenting the amount of charity care it provides and demonstrating its compliance with its charity care policies.

ECF No. 18-1 at 2–3; *accord id.* at 5. The Department elsewhere described this condition as "requir[ing] CHS to increase the level of charity care to the regional

---

determination of sponsorship status indicates that the responsible party may meet the criteria for classification as an indigent person, as described in WAC 246-453-040, collection efforts directed at the responsible party will be precluded pending a final determination of that classification, provided that the responsible party is cooperative with the hospital's reasonable efforts to reach a final determination of sponsorship status; . . . ."), *and* WAC 246-453-010(19) (2007) ("'Initial determination of sponsorship status' means an indication, pending verification, that the services provided by the hospital may or may not be covered by third party sponsorship, or an indication from the responsible party, pending verification, that he or she may meet the criteria for designation as an indigent person qualifying for charity care . . . ."). *See also* WAC 246-453-020(6) (2007) ("Hospitals may not require deposits from those responsible parties meeting the [indigency] criteria identified within WAC 246-453-040 (1) or (2), as indicated through an initial determination of sponsorship status.").

average." ECF No. 63-7 at 41. CHS agreed to this condition. ECF No. 18-2 at 2, 4. Then, in 2008, the Department issued the Certificates of Need and approved the purchase of each hospital, subject to this condition. ECF No. 95-3 at 2; ECF No. 95-4 at 2.

## LEGAL STANDARD

A party may seek summary judgment on just a "part of [a] claim or defense." Fed. R. Civ. P. 56(a). "[P]artial summary judgment is merely a pretrial adjudication that certain issues shall be deemed established for the trial of the case." Fed. R. Civ. P. 56 advisory committee's note to 1946 amendment. While CHS argues the Foundation's motion for partial summary judgment is unnecessary, that is not the governing legal standard. Instead, "[t]he court *shall* grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphasis added).

A party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). But the Court will deny summary judgment if the record establishes a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

The moving party has the initial burden of showing no reasonable trier of fact could find other than for the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party meets its burden, the nonmoving party must point to specific facts establishing a genuine dispute of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

"[A] mere 'scintilla' of evidence will be insufficient to defeat a properly supported motion for summary judgment; instead, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" *Fazio v. City & County of San Francisco*, 125 F.3d 1328, 1331 (9th Cir. 1997) (quoting *Anderson*, 477 U.S. at 249, 252). If the nonmoving party fails to make such a showing for any of the elements essential to its case as to which it would have the burden of proof at trial, the Court should grant the summary judgment motion. *Celotex*, 477 U.S. at 322.

The Court must view the facts and draw inferences in the manner most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255; *Chaffin v. United States*, 176 F.3d 1208, 1213 (9th Cir. 1999). And, the Court "must not grant summary judgment based on [its] determination that one set of facts is more believable than another." *Nelson v. City of Davis*, 571 F.3d 924, 929 (9th Cir. 2009).

## DISCUSSION

"A breach of contract is actionable only if the contract imposes a duty, the

duty is breached, and the breach proximately causes damage to the claimant." *Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus.*, 899 P.2d 6, 9 (Wash. Ct. App. 1995). The Court previously ruled the Certificates of Need are enforceable under the parties' contract. But the Court left it to trial to determine whether CHS breached the Certificates of Need by failing to "use reasonable efforts to provide charity care in an amount comparable to or exceeding the average amount of charity care provided by hospitals in the Eastern Washington Region." ECF No. 61-1 at 2; ECF No. 61-2 at 2. The Foundation seeks partial summary judgment on the illegality of CHS's "upfront deposit practice" so the Court may "consider this adjudicative fact when it decides whether 'reasonable efforts' were undertaken." ECF No. 94 at 6.

CHS does not dispute that it asked self-paying patients to pay deposits before screening them for charity care eligibility. *See* ECF No. 123 at 6–9; ECF No. 125 at 2–6. Nor does it dispute that it had a contractual and legal duty to refrain from doing so.[2] Nevertheless, CHS argues that it did not breach or violate this duty because it

---

[2] For purposes of this motion, CHS does not dispute that asking self-paying patients to pay deposits constituted "collection efforts," which were prohibited before patients had been screened for charity care eligibility. *See* ECF No. 95-2 at 6, 19 ("[Each] Hospital will suspend all collection efforts (other than third party payors) and will not require any deposit pending an initial determination of Charity Care eligibility . . . ."); RCW 70.170.060(6) (2006) ("An initial determination of sponsorship status shall precede collection efforts directed at the patient."), and WAC 246-453-020(1) (2007) ("The initiation of collection efforts directed at the responsible party shall be precluded pending an initial determination of sponsorship

ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON BREACH OF CONTRACT AND VIOLATION OF CHARITY CARE ACT **-** 8

did not require self-paying patients to pay deposits as a condition to receiving appropriate hospital-based medical services, did not actively collect these deposits, used these requests for payment as a trigger for determining ability to pay, ceased all collection efforts once it received information suggesting inability to pay, and refunded all deposited money in the rare event charity care eligibility was established after payment. Assuming, as the Court must, that CHS's factual assertions are true, this does not excuse its illegal practice of *asking* self-paying patients to pay deposits *before* screening them for charity care eligibility. CHS's general efforts to inform self-paying patients of their rights, including the right to charity care, does not negate the fact that it sought payment before screening.

CHS's upfront requests for deposits not only constituted a breach of contract and a violation of statutory and regulatory law, it was also unreasonable *per se*. This is but one factor the Court must consider in determining whether CHS used "reasonable efforts" to provide charity care comparable to or exceeding the regional average—an issue that remains to be determined at trial.[3] ECF No. 61-1 at 2; ECF No. 61-2 at 2.

---

status, provided that the responsible party is cooperative with the hospital's efforts to reach an initial determination of sponsorship status . . . .").

[3] Much of CHS's arguments concern whether it ultimately met this "reasonable efforts" standard. But the Court previously reserved that issue for trial and the Foundation's motion does not ask the Court to decide that issue ahead of trial.

ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON BREACH OF CONTRACT AND VIOLATION OF CHARITY CARE ACT **-** 9

CHS asks the Court not to rule on the illegality of its upfront requests for deposits because the issue is not squarely presented in this case and is currently pending in another district. But the issue is within the scope of the Foundation's complaint and is relevant to its breach of contract claim. *See* ECF No. 1 at 8–10. The Court cannot simply decline to rule on the issue.

Viewing all evidence and drawing all reasonable inferences in the manner most favorable to CHS, no reasonable trier of fact could find in its favor on its upfront requests for deposits. On the contrary, a reasonable trier of fact could only find that doing so before screening for charity care eligibility is illegal. Therefore, the Foundation has met its initial burden in support of partial summary judgment. By contrast, CHS has failed to point to specific facts establishing a genuine dispute of material fact for trial on its upfront requests for deposits. CHS has failed to introduce the significant probative evidence required to defeat summary partial judgment. And, to the extent CHS has identified genuine factual disputes, they are not material because they do not affect the illegality of its upfront requests for deposits.

In sum, no genuine dispute exists as to any material fact and, as a matter of law, the Foundation is entitled to the narrow ruling it seeks. Because the Court grants the motion, it does not reach the parties' remaining arguments.

//

Accordingly, **IT IS HEREBY ORDERED**:

**1.** Plaintiff Empire Health Foundation's Motion for Partial Summary Judgment on Breach of Contract and Violation of Charity Care Act, **ECF Nos. 93 & 94**, is **GRANTED**.

**2.** The following shall be deemed established for trial:

 *A.* At times between 2011 and 2017, Defendants CHS/Community Health Systems Inc., Spokane Washington Hospital Company LLC, and Spokane Valley Washington Hospital Company LLC asked self-paying patients at both Deaconess Medical Center and Valley Hospital and Medical Center to pay deposits before screening them for charity care eligibility.

 *B.* The above conduct (1) breached the Asset Purchase Agreement, including the Certificates of Need enforceable under it; and (2) violated the Charity Care Act, Revised Code of Washington section 70.170.060(6) (2006), including its implementing regulation, Washington Administrative Code section 246-453-020(1) (2007).

 *C.* Because the above conduct constituted a breach of contract and a violation of statutory and regulatory law, it was unreasonable *per se*.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 9th day of July 2019.

_____
SALVADOR MENDOZA, JR.
United States District Judge

ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON BREACH OF CONTRACT AND VIOLATION OF CHARITY CARE ACT **-** 12