UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| EMPIRE HEALTH FOUNDATION, a Washington nonprofit corporation,<br><br>Plaintiff,<br><br>v.<br><br>CHS/COMMUNITY HEALTH SYSTEMS INC., a Delaware corporation; SPOKANE WASHINGTON HOSPITAL COMPANY LLC, a Delaware limited liability company; and SPOKANE VALLEY WASHINGTON HOSPITAL COMPANY LLC, a Delaware limited liability company,<br><br>Defendants. | No.   2:17-cv-00209-SMJ<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON DEFENSES AND AFFIRMATIVE DEFENSES** |

Plaintiff Empire Health Foundation sues Defendants CHS/Community Health Systems Inc., Spokane Washington Hospital Company LLC, and Spokane Valley Washington Hospital Company LLC (collectively "CHS") for breach of contract, alleging it failed to fulfill the charity care commitments it made in its 2008 acquisition of two Spokane area hospitals. ECF No. 1. Before the Court is the Foundation's Motion for Partial Summary Judgment Dismissing CHS's Affirmative Defenses, ECF No. 99. The Foundation seeks partial summary judgment that CHS

ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ON DEFENSES AND AFFIRMATIVE DEFENSES **-** 1

lacks evidence required to prove all elements of laches, waiver, and equitable estoppel, as well as contributory fault and failure to mitigate damages. *Id.* CHS opposes the motion, arguing sufficient facts support its defenses and affirmative defenses. ECF No. 135. After reviewing the record and relevant legal authorities, the Court grants the motion because no genuine dispute exists as to any material fact and, as a matter of law, the Foundation is entitled to the ruling it seeks.

## BACKGROUND

This case is scheduled for a bench trial on August 12, 2019. ECF No. 190. The underlying facts are set forth in the Court's February 27, 2019 Order Ruling on Cross-Motions for Summary Judgment, ECF No. 82, and will not be repeated here.

Two Certificates of Need, issued by the Washington State Department of Health in 2008, provide, "[Each hospital] will use reasonable efforts to provide charity care in an amount comparable to or exceeding the average amount of charity care provided by hospitals in the Eastern Washington Region. . . . [Each hospital] will maintain records documenting the amount of charity care it provides and demonstrating its compliance with its charity care policies." ECF No. 61-1 at 2; ECF No. 61-2 at 2.

The Court previously ruled this charity care condition is enforceable under the parties' 2007 Asset Purchase Agreement. ECF Nos. 22, 36, 50, 82. Regarding records, the contract provides that "[f]or a period of at least ten (10) years following

the Closing Date, Buyers will provide the Board of Trustees with an annual report of their compliance with this [provision setting forth charity care requirements]." ECF No. 100-10 at 3; ECF No. 136-1 at 3. Regarding waiver, the contract provides that "[t]he waiver by any party of a breach or violation of any provision of this Agreement shall not operate as, or be construed to constitute, a waiver of any subsequent breach of the same or any other provision hereof." ECF No. 100-9 at 3; ECF No. 136-1 at 5.

CHS regularly reported the hospitals' charity care levels to their respective boards of trustees. ECF No. 136-3 at 5–8; ECF No. 137 at 2. Those figures appeared in financial reports to the boards of trustees concerning many aspects of the hospitals' operations. ECF No. 136-3 at 8. CHS discussed those figures, and its compliance with its charity care obligations, at the boards of trustees' meetings. ECF No. 136-3 at 7; ECF No. 137 at 2.

But the boards of trustees were "never given the data that showed what the regional average of charity care was in the Eastern Washington region," even though CHS "did look at that data." ECF No. 136-3 at 10. Thus, CHS did not disclose to the boards of trustees how the hospitals' charity care levels compared to the regional average. *See id.* at 10–12; *see also* ECF No. 100-2 at 4; ECF No. 100-3 at 4–5. "The emphasis in the discussion was on the reasonable efforts throughout the process not on the regional averages." ECF No. 136-3 at 12. How the hospitals' charity care

levels compared to the regional average was publicly available on an official state government website. *See* ECF No. 105-12 at 3–4; ECF No. 105-13 at 15; ECF No. 138 at 3; ECF No. 150 at 4.

The Foundation's executives met with CHS's executives regularly in hopes of forming community partnerships to "co-invest in initiatives to try to . . . address homeless or high utilizers." ECF No. 136-2 at 6. These meetings were unsuccessful, and no community partnerships formed. *Id.* at 6–8. During these meetings, the Foundation never expressed concern over whether CHS was fulfilling its charity care obligations. *See* ECF No. 106 at 2; ECF No. 136-2 at 12.

In November 2016, a guest lecturer for a graduate class on health administration performed a "rough initial analysis" of the hospitals' charity care levels. ECF No. 136-2 at 10. When he shared the numbers with the Foundation, it soon engaged legal counsel and obtained "a more in-depth expert analysis" because it was "extremely disappointed with the charity care levels." *Id.*

The Foundation did not analyze the hospitals' charity care levels earlier because it understood CHS had an obligation to report to the boards of trustees, and the boards of trustees never notified the Foundation of any issues with the hospitals' charity care levels. *Id.* at 11–12. Ultimately, the Foundation did not scrutinize the hospitals' charity care levels until it engaged legal counsel. *Id.* at 13–15. Yet, the Foundation claims it has a fiduciary duty to enforce CHS's charity care obligations

on behalf of the Spokane community. ECF No. 105-5 at 15.

The Foundation filed this action on June 12, 2017, claiming breach of contract and breach of the implied duty of good faith and fair dealing. ECF No. 1. On October 11, 2017, the Court denied CHS's motion to dismiss the Foundation's claims that are "based on CHS's alleged failure to provide the required minimum level of charity-care." ECF No. 22 at 15. The Court declared "[t]hose claims survive" while dismissing others. *Id.* The Court also ruled "[t]he Foundation's claims are not time-barred" under the applicable statute of limitations, at least to the extent they are "based upon conduct occurring within the limitations period." *Id.* at 14. On February 27, 2019, the Court determined that, if the Foundation were to prevail at trial, it "may not recover under a traditional damages theory" but "may obtain equitable monetary relief." ECF No. 82 at 14, 17.

CHS asserts the affirmative defenses of laches, waiver, and equitable estoppel, and the defenses of contributory fault and failure to mitigate damages. ECF No. 38 at 10–11; ECF No. 87 at 2–3.

CHS argues it has "demonstrated profound prejudice caused by [the Foundation]'s nearly ten-year delay in bringing this action." ECF No. 138 at 4–5. CHS claims the Foundation's inaction led it to believe it was in compliance with its charity care obligations. *Id.* at 5. CHS notes the Foundation did not complain about the hospitals' charity care levels until after it announced it was selling them. *Id.* CHS

claims the Foundation's inaction denied it any opportunity to address concerns over the hospitals' charity care levels. *Id.*

Had the Foundation complained about the hospitals' charity care levels earlier, CHS would have taken the complaint seriously, escalated the issue to corporate leadership, and investigated the complaint at a local level. ECF No. 106 at 2; ECF No. 107 at 2; ECF No. 108 at 2. Deaconess Medical Center's Chief Executive Officer "would have . . . taken any appropriate action following that investigation." ECF No. 106 at 2. Valley Hospital and Medical Center's Chief Executive Officer "would have wanted to schedule a meeting with [the Foundation] to discuss [its] concerns in detail and to have an open and honest conversation about what Valley could do to improve." ECF No. 108 at 2. And, "[b]ased on the results of that investigation, [the Vice President of Revenue Cycle for both hospitals] would have taken appropriate action to respond to the complaint." ECF No. 107 at 2.

Further, CHS argues "[the Foundation]'s delay has prejudiced [its] ability to defend against this lawsuit. *Id.* Three potential witnesses no longer work for CHS or any related entities. ECF No. 105 at 1.

## LEGAL STANDARD

A party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The Court must grant summary judgment if "the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

The moving party has the initial burden of showing no reasonable trier of fact could find other than for the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party meets its burden, the nonmoving party must point to specific facts establishing a genuine dispute of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

"[A] mere 'scintilla' of evidence will be insufficient to defeat a properly supported motion for summary judgment; instead, the nonmoving party must introduce some 'significant probative evidence tending to support th[at party's case].'" *Fazio v. City & County of San Francisco*, 125 F.3d 1328, 1331 (9th Cir. 1997) (quoting *Anderson*, 477 U.S. at 249, 252). If the nonmoving party fails to make such a showing for any of the elements essential to its case as to which it would have the burden of proof at trial, the Court should grant the summary judgment motion. *Celotex*, 477 U.S. at 322.

The Court must view the facts and draw inferences in the manner most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255; *Chaffin v. United*

*States*, 176 F.3d 1208, 1213 (9th Cir. 1999). And, the Court "must not grant summary judgment based on [its] determination that one set of facts is more believable than another." *Nelson v. City of Davis*, 571 F.3d 924, 929 (9th Cir. 2009).

## DISCUSSION

The Foundation seeks partial summary judgment on CHS's defenses and affirmative defenses, namely laches, waiver, and equitable estoppel, as well as contributory fault and failure to mitigate damages. The Court addresses each in turn.

**A.      Affirmative defense of laches**

"Laches consists of two elements: (1) inexcusable delay and (2) prejudice to the other party from such delay." *Auto. United Trades Org. v. State*, 286 P.3d 377, 379 (Wash. 2012) (quoting *State ex rel. Citizens Against Tolls v. Murphy*, 88 P.3d 375, 383 (Wash. 2004)). "Laches is an extraordinary defense . . . ." *Glob. Neighborhood v. Respect Wash.*, 434 P.3d 1024, 1040 (Wash. Ct. App. 2019). "Absent unusual circumstances, the doctrine of laches should not be invoked to bar an action short of the applicable statute of limitation." *Id*. "Furthermore, the defense of laches is improperly invoked when both parties are equally at fault in creating the delay." *Brost v. L.A.N.D., Inc.*, 680 P.2d 453, 457 (Wash. Ct. App. 1984).

"But the main component of the doctrine is not so much the period of delay in bringing the action, but the resulting prejudice and damage to others." *Clark Cty. Pub. Util. Dist. No. 1 v. Wilkinson*, 991 P.2d 1161, 1166 (Wash. 2000). "The burden

is on the defendant to show whether and to what extent he or she has been prejudiced by the delay." *Id.* at 1167. "To constitute laches there must not only be a delay in the assertion of a claim but also some change of condition must have occurred which would make it inequitable to enforce it." *Newport Yacht Basin Ass'n of Condo. Owners v. Supreme Nw., Inc.*, 277 P.3d 18, 30–31 (Wash. Ct. App. 2012) (quoting *Waldrip v. Olympia Oyster Co.*, 244 P.2d 273, 278 (Wash. 1952)).

CHS cannot meet its burden of proof on its affirmative defense of laches. First, the Foundation's delay in filing this action is not inexcusable. Its claims alleging CHS failed to fulfill its charity care obligations from 2011 to 2017 are within the statute of limitations. Both parties are equally at fault in creating the delay because, while the Foundation did not ascertain how the hospitals' charity care levels compared to the regional average, CHS also did not present that comparison to the boards of trustees, and the boards of trustees never notified the Foundation of any issues with the hospitals' charity care levels. On this record, it appears the delay is not inconsistent with the Foundation's fiduciary duty to enforce CHS's charity care obligations on behalf of the Spokane community.

Second, CHS has suffered no tangible prejudice traceable to the delay. While CHS claims the Foundation's inaction led it to believe it was in compliance with its charity care obligations, it points to no evidence establishing it actually held that belief, let alone evidence linking that belief to such inaction. At most, CHS can

establish that, had the Foundation complained about the hospitals' charity care levels earlier, it would have investigated the complaint and taken "appropriate action," depending on the results of such investigation. Notably absent from CHS's evidence is any indication that it would have actually provided more charity care to the Spokane community. Additionally, losing witnesses is a common occurrence that the statute of limitations already contemplates in establishing standard legislative limits on the right to maintain an action. Even so, CHS presents no evidence of how the witnesses it lost might have aided its defense. For all these reasons, CHS has failed to show a change of conditions rendering it inequitable to enforce its charity care obligations.

Overall, the circumstances of this case are not unusual, even though the available equitable remedy would be. Thus, the statute of limitations, not laches, marks the appropriate limitations period. Accordingly, CHS's affirmative defense of laches fails as a matter of law.

**B.      Affirmative defense of waiver**

"A waiver is the intentional and voluntary relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right." *Schroeder v. Excelsior Mgmt. Grp., LLC*, 297 P.3d 677, 683 (Wash. 2013) (quoting *Bowman v. Webster*, 269 P.2d 960, 961 (Wash. 1954)). "To constitute implied waiver, there must exist unequivocal acts or conduct evidencing an intent to waive;

waiver will not be inferred from doubtful or ambiguous factors. The intention to relinquish the right or advantage must be proved, and the burden is on the party claiming waiver." *224 Westlake, LLC v. Engstrom Props., LLC*, 281 P.3d 693, 702 (Wash. Ct. App. 2012) (quoting *Jones v. Best*, 950 P.2d 1, 6 (Wash. 1998)). "Where there is 'no evidence whatever' that a party had knowledge of the facts of a violation until after litigation began, there is no waiver." *Id.* (quoting *Ross v. Harding*, 391 P.2d 526 (Wash. 1964)).

CHS cannot meet its burden of proof on its affirmative defense of waiver. It was not until seven months before the Foundation filed this action that it learned how the hospitals' charity care levels compared to the regional average. There is no evidence whatever that the Foundation acquired such knowledge sooner. Upon acquiring such knowledge, the Foundation soon engaged legal counsel, obtained expert analysis of the hospitals' charity care levels, and completed all steps preceding its filing of this action.

The Foundation's acts and conduct do not unequivocally evidence an intent to waive its claims alleging CHS failed to fulfill its charity care obligations from 2011 to 2017. While the Foundation may have forfeited any earlier claims outside the statute of limitations, the contract provides that waiving one breach or violation does not waive any subsequent breach or violation of the same character. Therefore, as to the Foundation's claims within the statute of limitations, CHS has shown

neither an intentional and voluntary relinquishment of a known right, nor conduct warranting an inference of the relinquishment of such right. Accordingly, CHS's affirmative defense of waiver fails as a matter of law.

## C. Affirmative defense of equitable estoppel

"The elements of equitable estoppel are: (1) a party's admission, statement or act inconsistent with its later claim; (2) action by another party in reliance on the first party's act, statement or admission; and (3) injury that would result to the relying party from allowing the first party to contradict or repudiate the prior act, statement or admission." *In re Estate of Hambleton*, 335 P.3d 398, 414 (Wash. 2014) (quoting *Kramarevcky v. Dep't of Soc. & Health Servs.*, 863 P.2d 535, 538 (Wash. 1993)). "Equitable estoppel is not favored, and the party asserting estoppel must prove each of its elements by clear, cogent, and convincing evidence." *Robinson v. City of Seattle*, 830 P.2d 318, 345 (Wash. 1992).

"[I]t is an essential element of an equitable estoppel claim that the party asserting estoppel show that the other's conduct induced him to believe in the existence of the state of facts and to act thereon to his prejudice." *Sorenson v. Pyeatt*, 146 P.3d 1172, 1180 (Wash. 2006). "In order to create an estoppel, it is necessary that the party claiming to have been influenced by the conduct or declarations of another was either destitute of knowledge of the true facts or without means of acquiring such facts." *Pub. Util. Dist. No. 1 of Lewis Cty. v. Wash. Pub. Power*

*Supply Sys.*, 705 P.2d 1195, 1205 (Wash. 1985). "[M]ere silence or acquiescence will not operate to work an estoppel where the other party has constructive notice of public records which disclose the true facts." *Newport Yacht*, 277 P.3d at 32 (quoting *Waldrip*, 244 P.2d at 277). "Where the parties have equal means of knowledge there can be no estoppel in favor of either." *Id.* (quoting *Waldrip*, 244 P.2d at 278). "[W]here the representations allegedly relied upon are matters of law, rather than fact, equitable estoppel will not be applied." *Lauer v. Pierce County*, 267 P.3d 988, 994 (Wash. 2011) (quoting *Dep't of Ecology v. Theodoratus*, 957 P.2d 1241, 1249 (Wash. 1998)).

CHS cannot meet its burden of proof on its affirmative defense of equitable estoppel. CHS was neither destitute of knowledge regarding the true facts nor lacking means of discovering them. On the contrary, CHS admits it looked at the regional average. With that information, CHS could readily compare the hospitals' charity care levels to the regional average. Thus, CHS had (at least) constructive notice of public records disclosing the true facts—the same records it faults the Foundation for failing to check.

While CHS argues it took the Foundation's silence as an indication that it was in compliance with its charity care obligations, it could not reasonably rely upon such silence for the proposition it claims. First, as explained above, CHS's means of discovering the true facts were (at least) equal to the Foundation's. Second, whether

a given set of facts complies with a debatable set of contractual or legal requirements is a matter of law, rather than fact. Thus, CHS has failed to show the Foundation induced it to believe in the existence of a state of facts and to act thereon to its prejudice. Accordingly, CHS's affirmative defense of equitable estoppel fails as a matter of law.

**D.     Defenses of contributory fault and failure to mitigate damages**

The Foundation argues the contributory-fault defense does not apply in this breach-of-contract case. *See* ECF No. 99 at 16. CHS does not respond to this argument. *See* ECF No. 135 at 21. The Court agrees with the Foundation and dismisses CHS's defense of contributory fault.

The Foundation also argues the failure-to-mitigate-damages defense is infirm as applied here. *See* ECF No. 99 at 15–16. CHS concedes this defense "is not squarely applicable," given the Court's prior ruling that, if the Foundation were to prevail at trial, it may not recover under a traditional damages theory but may obtain equitable monetary relief. ECF No. 135 at 21. Nevertheless, CHS argues the Foundation's "inaction," "delay," and "failure to monitor" should inform the Court's analysis in fashioning an equitable remedy, if any. *Id.* The Court agrees with CHS and grants it leave to develop something analogous to the failure-to-mitigate-damages defense. However, because it does not technically apply here, the Court dismisses CHS's defense of failure to mitigate damages.

Viewing all evidence and drawing all reasonable inferences in the manner most favorable to CHS, no reasonable trier of fact could find in its favor on its defenses and affirmative defenses. On the contrary, a reasonable trier of fact could only find that CHS lacks evidence required to prove all elements of laches, waiver, and equitable estoppel, as well as contributory fault and failure to mitigate damages. Therefore, the Foundation has met its initial burden in support of partial summary judgment. By contrast, CHS has failed to point to specific facts establishing a genuine dispute of material fact for trial on its defenses and affirmative defenses. CHS has failed to introduce the significant probative evidence required to defeat partial summary judgment. And, to the extent CHS has identified genuine factual disputes, they are not material because they do not alter the outcome of its defenses and affirmative defenses.

In sum, no genuine dispute exists as to any material fact and, as a matter of law, the Foundation is entitled to the ruling it seeks. Because the Court grants the motion, it does not reach the parties' remaining arguments.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff Empire Health Foundation's Motion for Partial Summary Judgment Dismissing CHS's Affirmative Defenses, **ECF No. 99**, is **GRANTED**.

2. Defendants CHS/Community Health Systems Inc., Spokane

Washington Hospital Company LLC, and Spokane Valley Washington Hospital Company LLC's to-be-adjudicated defenses and affirmative defenses are dismissed as follows:

    *A.* Defendants' affirmative defense of laches, **ECF No. 38 at 11 ¶ 10**; **ECF No. 87 at 3 ¶ 8**, is **DISMISSED WITH PREJUDICE**.

    *B.* Defendants' affirmative defense of waiver, **ECF No. 38 at 11 ¶ 8**; **ECF No. 87 at 2 ¶ 6**, is **DISMISSED WITH PREJUDICE**.

    *C.* Defendants' affirmative defense of equitable estoppel, **ECF No. 38 at 11 ¶ 9**; **ECF No. 87 at 2–3 ¶ 7**, is **DISMISSED WITH PREJUDICE**.

    *D.* Defendants' defenses of contributory fault and failure to mitigate damages, **ECF No. 38 at 10–11 ¶¶ 6–7**; **ECF No. 87 at 2 ¶¶ 4–5**, are **DISMISSED WITH PREJUDICE**. However, Defendants may elicit evidence of what they describe as Plaintiff's "inaction," "delay," and "failure to monitor," ECF No. 135 at 21, and the Court will evaluate such evidence in fashioning an equitable remedy, if any.

**3.** Defendants' Motion for Summary Judgment Based on Laches, **ECF**

**No. 104**, is **DENIED AS MOOT**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 9th day of July 2019.

_____
SALVADOR MENDOZA, JR.
United States District Judge